UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN CURLEY,<br><br>             Plaintiff,<br><br>     v.<br><br>CHIEF DEPUTY WARDEN CLARK, et al.,<br><br>             Defendants. | **1:20-cv-00453-JLT (PC)**<br><br>**ORDER REQUIRING PLAINTIFF TO SUBMIT A RESPONSE**<br><br>**(Doc. 1)**<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff has filed a complaint asserting constitutional claims against governmental employees and/or entities. (Doc. 1.) Generally, the Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

////

////

## I. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff brings this damages action against several individuals employed at the California State Prison in Corcoran, California ("CSP-Cor"): Chief Deputy Warden Clark, Chief Deputy Warden Gamboa, Associate Warden D. Goss, Acting Chief Deputy Warden Cambell, Correctional Counselor II G. Rangel, Lt. E. Garza, Captain D. Burns, and Counselor W. Costello. Each defendant is named in his or her official and individual capacity.

As best as the Court can determine, plaintiff alleges as follows:

Plaintiff arrived at CSP-Cor from the California Health Care Facility on February 21, 2019, as a "[Psychiatric Inpatient Programs] discharge inmate." Upon his release from the California Health Care Facility, plaintiff was endorsed to be transferred to California State Prison in Lancaster

("CSP-Lan") where he was to receive treatment in the Enhanced Outpatient Program ("EOP"). Plaintiff's transfer endorsement to CSP-Lan was set to expire on May 15, 2019.

Despite the endorsement to CSP-Lan, plaintiff was processed at CSP-Cor where Lt. Garza and Captain Burns determined that plaintiff should be housed in the administrative segregation unit ("ASU") due to the "discrepancy concerning [plaintiff's] case factors."

On March 7 and March 9, 2019, plaintiff received RVRs for indecent exposure, which he claims were falsified. As a result of the RVRs, the Institution Classification Committee ("ICC") endorsed plaintiff on March 13 to the COR Indecent Exposure ("IEX") Pilot Program, a 180-day program that must be completed by inmates charged with IEX. This program is a non-designated yard where Sensitive Needs Yard ("SNY") inmates and general population inmates are not separated from one another.

Plaintiff was placed in ASU on March 21, 2019. That same day, he filed an inmate grievance regarding his placement in the COR-IEX program and the failure to transfer him to CSP-Lac. Plaintiff also sought release from ASU and placement in a Level 3 SNY pending his transfer.

On March 22, 2019, plaintiff was released from ASU and placed in a non-designated EOP facility, meaning that SNY and general population inmates are not separated from one another. Plaintiff was later assaulted by a SNY inmate.

Plaintiff's appeal was partially granted at the first level of review on May 16, 2019, by Correctional Counselor II Rangel and Associate Warden Goss. They noted that plaintiff was required to complete the 180-day COR-IEX program in light of his RVRs, but they also noted that the IEX program was being decommissioned, so he should expect to be released from the program soon.

On June 24, 2019, Chief Deputy Warden Gamboa partially granted plaintiff's appeal at the second level of review after plaintiff was informed that he would be seen by the classification committee for release from the COR-IEX program.

On June 27, 2019, the ICC, which was comprised of Costello and Rangel, released plaintiff from the COR-IEX program and placed him in a Level 3 EOP program pending transfer to an appropriate Level 4 facility that could serve his program needs. On August 28, 2019, the CSP-Cor

Unit Classification Committee, which included Correctional Counselor Costello, affirmed the June 27 ICC decision. On September 24, 2019, plaintiff was sent out to court before a case services representative could review his file.

On November 14, 2019, plaintiff's appeal was granted at the third level of review. Plaintiff was released from the COR-IEX program, and a classification committee was scheduled to review his case upon his return from court.

Plaintiff claims that these improper housing decisions violated his constitutional rights and had a serious adverse effect on his mental health, cause serious physical injuries, and delayed medical procedures. He also claims that his youth offenders board preparation has been hindered.

## III.   Discussion

### A. Official v. Individual Capacity Claims

Plaintiff names the defendants in their official and individual capacities. Because plaintiff is seeking only damages, he is informed that the Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. Aholelei v. Department of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar official capacity suit for prospective relief, Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060-61 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

A claim for prospective injunctive relief against a state official in his official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. Will v. Michigan Dept. of State Police, 491 U.S. 58, 92 (1989); accord Rouser v. White, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit

seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). Plaintiff's official capacity claims must therefore be dismissed.

**B. Linkage**

Under § 1983, the plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77 Simmons v. Navajo County, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77. Supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012).

Next, plaintiff names Chief Deputy Warden Clark and Acting Chief Deputy Warden Cambell, but he asserts no charging allegations as to any of them. Accordingly, the Court finds that he fails to state a claim against them.

**C. Fourteenth Amendment Due Process**

   **a. Falsified Reports**

Plaintiff contends that the two RVRs issued for indecent exposure were falsified. To the extent he seeks to impose liability for these RVRs, he is forewarned that the mere filing of a false report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. See Muhammad v. Rubia, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 F. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (citations omitted); Harper v. Costa, 2009 WL 1684599, at *2-3 (E.D. Cal., June 16, 2009), aff'd, 393 F. App'x 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California ... have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to

state a cognizable claim for relief under § 1983."). Thus, any claim based on the allegedly falsified reports necessarily fails.

### b. Processing Inmate Grievance

Several of the defendants are named solely for their role in the processing of plaintiff's inmate grievance. The existence of a prison grievance procedure establishes a procedural right only and "does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citation omitted); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure). This means that a prison official's action in reviewing an inmate grievance cannot serve as a basis for liability under Section 1983. Buckley, 997 F.2d at 495. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (citations omitted). Therefore, to the extent plaintiff seeks to proceed against any of these defendants based solely on their role in responding to his grievances, any such claim fails.

### c. Prison Disciplinary Hearings

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). "When protected interests are implicated, the right to some kind of prior hearing is paramount...." Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556.

With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff, 418 U.S. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin, 515 U.S. 472. In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached...." Hill, 472 U.S. at 455-56.

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life

and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Liberally construed, plaintiff alleges a due process claim premised on his placement in the COR-IEX program. On review, this claim fails because it is not clear against whom it is asserted. In addition, the claim is vague and conclusory. That is, while plaintiff contends that he was placed in this program after having been issued falsified RVRs, there are simply no facts to inform the Court or any of the defendants who was responsible for this placement, what procedures were followed in making the placement determination (i.e., a committee decision, a hearing, etc.), or what were the conditions of the program in relation to the ordinary incidents of prison life. In the absence of these necessary details, this claim cannot be analyzed and must therefore be dismissed.

### d. Transfer to Preferred Institution

Finally, any claim premised on the defendants' alleged failure to house plaintiff at CSP-Lan fails because plaintiff is not entitled to be transferred to any particular prison. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976); Montayne v. Haymes, 427 U.S. 236, 242 (1976) (It is well settled that prisoners have no constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment.).

### IV.   Conclusion

Plaintiff's complaint fails to state a claim on which relief may be granted. The Court will grant plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss the complaint without leave to amend, plaintiff will have an opportunity to object, and the matter will be decided by a District Judge.

If plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation

of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Accordingly, the Court ORDERS as follows:

1. Within thirty days from the date of service of this order, plaintiff must file either a first amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the complaint; and
2. If plaintiff fails to file a first amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim.

IT IS SO ORDERED.

Dated:   **November 2, 2020**                                  /s/ Jennifer L. Thurston
                                                                              UNITED STATES MAGISTRATE JUDGE