UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN CURLEY,<br><br>            Plaintiff,<br><br>     v.<br><br>CLARK, et al.,<br><br>            Defendants. | Case No.: 1:20-cv-00453-JLT-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF**<br><br>(Doc. 26)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Kevin Curley is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.    INTRODUCTION**

The Court issued its Second Screening Order on May 26, 2022. (Doc. 25.) The Court determined Plaintiff's first amended complaint failed to state any cognizable claim. (*Id*. at 5-10.) He was granted leave to file a second amended complaint, curing the deficiencies identified in the order, within 30 days. (*Id*. at 10-12.)

On June 29, 2022, Plaintiff filed a second amended complaint. (Doc. 26.)

**II.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### III.   PLEADING REQUIREMENTS

#### A.   Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

2

1  liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV.     DISCUSSION

### A.  Plaintiff's Second Amended Complaint

Plaintiff names California State Prison, Corcoran ("CSP-COR") Chief Deputy Wardens Clark and Gamboa, Acting Chief Deputy Warden Cambell, Associate Warden D. Goss, Correctional Counselor II G. Rangel, Correctional Counselor W. Costello, Captain D. Burns, Lieutenant E. Garza, and "John and Jane Does" as defendants. (Doc. 26 at 1-3, 5.) He alleges Fourteenth Amendment due process violations and Eighth Amendment claims. (*Id*. at 5-8.) Plaintiff seeks monetary compensation and "begs all relief the court feels comforted issuing, from the cruel acts, constitution violations, due process violations, and complete acts disregarding a mental health [patient's] rights…." (*Id*. at 7.)

### B.  Factual Allegations

Plaintiff states he arrived at CSP-COR from the California Health Care Facility on February 21, 2019. (Doc. 26 at 5.) He asserts he was "a 'psychiatric in patient program/discharge inmate' upon release" and "endorsed to be transferred to California State Prison-Lancaster … where he was to receive treatment in the Enhance[d] Out Patient ('EOP') program." (*Id*.) The

4

transfer endorsement was set to expire on May 15, 2019. (*Id.*) Plaintiff contends he "was set up in a situation in administrative segregation (ASU) lockup, that processing at CSP-Corcoran where Lt. Garza and Capt. Burns determined" Plaintiff should be housed there "due to the 'discrepancy concerning'" his case factors. (*Id.* at 6.) Plaintiff alleges that on March 7, 2019, he "received RVR's for IEX, which plaintiff know[s] were falsified." (*Id.*) As a result of the issuance of the RVRs, Plaintiff was endorsed on March 13, 2019 to "(COR-IEX) pilot program, a 180 day program that must be completed by inmates charged w/IEX." (*Id.*) He states IEX "is a non-designated (EOP) facility, meaning that (SNY) 'sensitive needs' inmates and general pop inmates are not separated from one another." (*Id.*) Plaintiff contends that on March 21, 2019, he filed an inmate grievance. (*Id.*)

Plaintiff contends the "complete disregard of CSP-COR placement in the COR-IEX [program] and failure to transfer" Plaintiff to the state prison in Lancaster, and to release him from administrative segregation, his placement in "a Level 3 SNY-program" and subsequent placement in a non-designated EOP yard, resulted in Plaintiff being assaulted by another SNY inmate. (Doc. 26 at 6.) Plaintiff contends his grievance was partially granted at the first level of review by Defendants Rangel and Goss on May 16, 2019. (*Id.*) Plaintiff asserts Rangel and Goss "noted that plaintiff was required to complete 180 day CORIEX [program] in light of RVR's, but they also noted the IEX [program] was being decommissioned, so [Plaintiff] should be released from [program] soon." (*Id.*) Plaintiff asserts Rangel and Goss knew he "was never to be transferred to IEX-CSP-COR pilot [program], but rather transferred to CSP-Lan, the EOP [program] for treatment." (*Id.* at 6-7.) Plaintiff contends Defendants Garza and Burns "determined plaintiff be housed in the CSP-COR (ASU) due to the 'discrepancy concerning plaintiff's case factors' on 3/7/19 and 3/9/2019." (*Id.* at 7.) He states "a RVR was administered CSP-COR '(ICC)' as plaintiff was placed in (ASU) 3/21/19 from result of RVR." (*Id.*) He asserts that on June 24, 2019, Defendant Gamboa partially granted his appeal at "the second level 6/27/19 (ICC) which was comprised of Costello and Rangel, released to a Level 3 SNY yard pending transfer to an appropriate Level 4 facility that could serve plaintiff EOP mental health program needs." (*Id.* at 7-8.) Plaintiff asserts Defendant Costello "affirmed" that decision. (*Id.* at 8.) On September 24,

2019, Plaintiff "was sent to court before a case services representative could review" his file. (*Id.*) Plaintiff contends his appeal was then granted at the third level of review and he was released from the COR-IEX program, and a classification committee was to conduct a review upon Plaintiff's return from court. (*Id.*) Plaintiff asserts "these improper housing decisions" violated his constitutional rights and had a serious adverse effect on his mental health. (*Id.*) Plaintiff alleges he suffered serious physical injuries and "delayed medical procedures." (*Id.*) Further, he asserts that the "youth offenders board preparation has been hindered if the needed (EOP mental health care) was of plaintiff classified housing, that would supported CDCR, mandated Rehabilitation act of 2026 by Prop 57 and SB 260, all courses of Rehabilitation was denied." (*Id.*) He maintains the actions of "CSP-COR mentioned staff members and wardens, due to an ASU placement, illegal housing @ a facility" resulted in Plaintiff being assaulted. (*Id.*)

### C. Plaintiff's Claims and Analysis

<u>Claim One: Due Process</u>

The Court construes Plaintiff's first claim to assert Fourteenth Amendment due process violations concerning all named Defendants.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

An inmate has no constitutional right to enjoy a particular security classification or housing. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's transfer decisions); *see also Myron v. Terhune*, 476

F.3d 716, 718 (9th Cir. 2007) (classification). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citation omitted). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. *See Meachum*, 427 U.S. at 224-25; *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir.1993) (no Due Process right to be housed in certain barrack or housing unit, or with certain inmates); *Bjorlin v. Hubbard*, No. CIV S–09–1793 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fourteenth Amendment). Prisoners have no federal due process right to a particular classification score. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.1987) (citing *Moody v. Daggett*, 429 U.S. 78 (1976) (no constitutional right to particular classification)).

Here, Plaintiff contends he was improperly transferred to CSP-COR rather than the state prison in Lancaster, California. As Plaintiff was previously advised however, "his claim fails because a prisoner does not have a right to be transferred to any particular prison or to be placed in any particular housing." (*See* Doc. 25 at 6 [second screening order].) He further was advised that "prison officials are vested with broad authority to transfer inmates, and courts must afford appropriate deference and flexibility to state officials…." (*Id*.) In his second amended complaint, Plaintiff fails to allege an atypical or significant hardship, even though the transfer purportedly led to Plaintiff's assault by another inmate. *Sandin*, 515 U.S. at 484. Because the allegations do not suggest that Plaintiff faced an atypical and significant hardship, he fails to state a claim upon which relief can be granted. At bottom, Plaintiff has no constitutional right to a particular housing decision. *Meachum*, 427 U.S. at 224-25; *Wilkinson*, 545 U.S. at 221; *Hernandez*, 833 F.2d at 1318. Moreover, granting further leave to amend appears futile and should be denied. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000).

<u>Claim Two: Eighth Amendment</u>

The Court construes Plaintiff's second claim to assert Eighth Amendment conditions of confinement claims against all named Defendants.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference …." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Constitution "'does not mandate comfortable prisons.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) [outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day] with *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) [outdoor exercise not required when

prisoners otherwise had access to dayroom 18 hours per day]). To say that some prison conditions may interact in this fashion is far from saying that all prison conditions are a seamless web for Eighth Amendment purposes. *Id*. Amorphous "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id*. Further, temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson*, 45 F.3d 1310 (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).

If an objective deprivation is shown, a plaintiff must show that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson*, 290 F.3d at 1188). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). An inmate has no constitutional right, however, to enjoy a particular security classification or housing. *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Even liberally construing the second amended complaint, Plaintiff fails to state an Eighth Amendment claim. To the extent Plaintiff's claim concerns a housing determination, there is no constitutional violation. Thus, in *Myron v. Terhune*, the Ninth Circuit held that a state prisoner's allegedly improper classification to a higher-level security facility than indicated by his individual security classification did not violate the Eighth Amendment. *Myron*, 476 F.3d at 719. As the circuit court noted, because "the mere act of classification 'does not amount to an infliction of

pain,' it 'is not condemned by the Eighth Amendment.'" *Id.* (citation omitted).

To the extent Plaintiff's claims concern a failure to protect theory, they too fail. Although Plaintiff has been previously advised regarding the need to allege specific facts concerning each individual named (*see* Doc. 25 at 8-9), Plaintiff's assertions concerning Defendants Rangel, Goss, Garza, Burns, Gamboa, and Costello are insufficient to state a claim. Plaintiff makes vague and conclusory allegations that these Defendants knew he faced a substantial risk of serious harm but fails to explain or demonstrate they drew the inference. *Toguchi*, 391 F.3d at 1057. The allegations are insufficient to explain how Defendants knew their failure to transfer Plaintiff to another facility would avoid any substantial risk of harm presented by another similarly housed inmate; neither circumstantial evidence nor obviousness in that regard are present. *Farmer*, 511 U.S. at 842. Plaintiff's factual allegations state only that these individuals were involved in either the original housing determination upon his arrival at CSP-COR or their involvement in the grievance procedure. As the Court previously explained, the "grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983." (*See* Doc. 25 at 10.) Additionally, there are no facts whatsoever concerning named Defendants Cambell, Clark or John and Jane Does.

In sum, Plaintiff fails to show that prison officials were deliberately indifferent to an excessive risk to his personal safety. *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160. His allegations that he was improperly housed do not amount to cruel or unusual punishment. *Myron*, 476 F.3d at 719. Therefore, Plaintiff fails to state a claim under the Eighth Amendment. Further, given that Plaintiff previously was advised of these deficiencies and has either refused or is unable to remedy the defects, granting further leave to amend appears futile and should be denied. *Lopez*, 203 F.3d at 1126-30.

### V. CONCLUSIONS AND RECOMMENDATIONS

Accordingly, for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's second amended complaint be dismissed without leave to amend for failure to state a claim.

These Findings and Recommendations will be submitted to the district judge assigned to

this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **November 17, 2023**

UNITED STATES MAGISTRATE JUDGE